IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SITCO, INC., ) | |
| ) | Case No. CV-05-073-E-BLW |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| AGCO CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## INTRODUCTION

The Court has before it a partial summary judgment motion filed by plaintiff Sitco, Inc. ("Sitco"), and a motion to strike affidavits filed by defendant AGCO Corporation ("AGCO"). The court heard oral argument on September 15, 2005**,** and the motions are now at issue. For the reasons expressed below, the Court will grant partial summary judgment for Sitco. The motion to strike is mooted by the granting of summary judgment.

## FACTUAL BACKGROUND

The relevant facts are uncontested. Sitco was a farm equipment dealer in Preston, Idaho. Between 2000 and early 2005, Sitco continuously sold Valtra

tractors in its retail shop.  *Statement of All Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment* ("*Plaintiff's Statement of Facts*"), ¶ 7.  On June 1, 2000, Sitco signed a written dealer agreement with Valtra, Inc., which was the manufacturer and distributor of Valtra tractors.  *Plaintiff's Verified Complaint,* ¶¶ 8 & 10, & Exhibit B.  This written agreement expired by its terms on December 31, 2001.  *Id.*  Then in 2002, Valtra U.S.A., Inc. ("Valtra U.S.A.") became the distributor of Valtra tractors in the United States.  *Plaintiff's Statement of Facts,* ¶ 5.  Sitco signed a written dealer agreement with Valtra U.S.A. commencing in August of 2002.  *Plaintiff's Verified Complaint,* ¶ 15, & Exhibit H.  According to its terms, this written agreement expired on December 31, 2003.  *Id.*[1]  However, Sitco continued to purchase Valtra tractors and parts as a dealer.  *Plaintiff's Statement of Facts*, ¶ 7.

In January 2004, the defendant, AGCO, became the sole owner of Valtra, Inc. and Valtra U.S.A.  *Id.* at ¶ 6.  Between January 2004 and early 2005, Sitco sold dozens of Valtra tractors purchased from AGCO.  *Affidavit of Gerald ("Jerry") A. Weaver in Opposition to Sitco, Inc.'s Motion for Partial Summary*

---

[1] The Court reads the written Valtra U.S.A. contract to expire by its terms on December 31, 2002.  *See Plaintiff's Verified Complaint,* Exhibit H at ¶ 12.2.  However, this discrepancy makes no difference in the ultimate analysis.  By its own terms, the written contract did exist between August 24, 2002 and December 31, 2002 at the very least.

**Memorandum Decision and Order – Page 2**

*Judgment*, ¶¶ 12-14; *Plaintiff's Verified Complaint*, ¶¶ 21 & 24, & Exhibits O-1, P, W, BB, & II.

During much of this time, AGCO was trying to get Sitco to sign a form contract that all of its dealers must sign. *Affidavit of Thomas L. Hardin, Jr. In Opposition to Sitco, Inc.'s Motion for Partial Summary Judgement* ("*Hardin Affidavit*"), ¶¶ 6-17. Sitco did not want to sign AGCO's form contract for several reasons. *Plaintiff's Statement of Facts*, ¶ 17-22. Perhaps most significantly, AGCO's form contract permitted AGCO to terminate the agreement for any reason with only 30 days written notice. *Id.* at ¶ 22; *Plaintiff's Verified Complaint*, Exhibit HH at ¶ 51.

On December 22, 2004, AGCO notified Sitco in writing that it must sign AGCO's form contract to continue purchasing Valtra tractors. *Hardin Affidavit*, ¶ 17 and Exhibit H. AGCO's notice did not cite failed sales performance or any other deficiency on Sitco's part. *Id.* at Exhibit H. Sitco's only failure was its failure to sign the form contract. Finally, by February of 2005, AGCO refused to process any more of Sitco's orders. *Plaintiff's Verified Complaint*, Exhibits KK, LL, & MM.

Sitco brought this action against AGCO for damages, relying on Idaho's Farm Equipment Dealer Law, Idaho Code § 28-24-101 *et. seq.* (2005). Sitco

**Memorandum Decision and Order – Page 3**

alleges that a statutory dealer agreement existed between Sitco and AGCO, and that AGCO illegally failed to comply with the statutory notice and good cause requirements to end the agreement. AGCO contends that the parties did not have a dealer agreement. The matter is now before the Court upon Sitco's motion for partial summary judgment on liability.

## ANALYSIS

**1.    The Standard of Review on Summary Judgment.**

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). The Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Industry Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

**2.    The Idaho Farm Equipment Dealer Law.**

The Idaho Farm Equipment Dealer Law, Idaho Code § 28-24-101 *et. seq.* (2005), is protectionist legislation clearly intended to grant broad protection for independent farm equipment dealers.  The statute forbids equipment manufacturers and distributors (collectively "suppliers") from terminating or failing to renew a "dealer agreement" without "good cause."  Idaho Code § 28-24-103(4).

The statute lists several dealer deficiencies that would enable the supplier to terminate an agreement immediately with written notice.  Idaho Code §§ 28-24-104 (1) & (2).  Otherwise, the supplier must give the dealer 90 days written notice prior to any "any proposed termination or nonrenewal of a dealer agreement."  Idaho Code § 28-24-104(1).  That notice becomes ineffective if the dealer cures the deficiency.  *Id.*

To enjoy these statutory protections, a dealer must merely have a "dealer agreement."  The statute defines "dealer agreement" as:

> "a contract or agreement, either express or implied, whether oral or written, between a supplier and an equipment dealer, by which the equipment dealer is granted the right to sell, distribute or service the supplier's equipment, where there is a continuing commercial relationship between the supplier and the equipment dealer."

Idaho Code § 28-24-102(3).  The statute further defines "continuing commercial

**Memorandum Decision and Order – Page 5**

relationship" as "*any relationship* in which the equipment dealer has been granted the right to sell or service equipment manufactured by supplier." *Id.* at (2) (emphasis added). Any "successor in interest" to a supplier assumes the statutory obligations to the dealer. *Id.* at § 28-24-104E.

### 3.     Sitco and AGCO had a "dealer agreement."

The crucial question is whether the undisputed facts indicate that Sitco and AGCO had a statutory "dealer agreement."[2] If so, AGCO illegally terminated Sitco without proper written notice and good cause.

Under Idaho common law, the question of the existence of an implied contract is a complex factual question. *Fox v. Mountain West Electric, Inc.*, 137 Idaho 703, 708-9, 53 P.3d 848, 853-54 (2002). However, a statute can alter common law. *Harrison v. Taylor*, 115 Idaho 588, 590-97, 768 P.2d 1321, 1323-30 (1989). Idaho courts have not yet determined whether the term "dealer agreement" alters the common law requirements to create an implied contract. Thus, this Court is faced with a question of statutory interpretation of first impression.

A plain reading of Idaho Code §§ 28-24-102 (2) & (3) indicates that only

---

[2] AGCO's brief and oral argument did not dispute Sitco's assertion that it is a "supplier" and Sitco is a "dealer" as defined in the statute. Thus, the Court will skip this step in the analysis.

two elements must be satisfied to create a "dealer agreement." First, the supplier must grant the dealer "the right to sell, distribute, or service the supplier's equipment." Second, the supplier must grant such a right with enough regularity to create a "continuing commercial relationship" between the dealer and the supplier.

AGCO argues that the word "contract" appears in the definition, and thus that the common law definition of "contract" applies. AGCO relies on two Idaho cases for this proposition. *See State v. Oar*, 129 Idaho 337, 340, 924 P.2d 599, 602 (1996) (legislature intended to incorporate a common law exception to the mistake of fact defense into a statute); *Thompson v. City of Lewiston*, 137 Idaho 473, 477-78, 50 P.3d 488, 492-93 (2002) (urban renewal statute incorporated common law standing requirements).

The Court disagrees with AGCO's interpretation of Idaho law. The cases AGCO cites merely hold that if the legislature wants to redefine a term with a common law meaning – such as the word "contract" – it must do so with clear and unambiguous language. Here, the word "contract" in the definition of "dealer agreement" is very clearly further qualified by the language of the statute. Moreover, the Idaho Supreme Court has found legislative intent to eliminate at least one common law doctrine despite a lack of precise language in the statute.

**Memorandum Decision and Order – Page 7**

*Harrison*, 115 Idaho at 590-97, 768 P.2d at 1323-30.  The statute at issue in *Harrison* eliminated the common law contributory negligence defense to negligence actions.  The statute did not mention the open and notorious danger defense.  However, the Idaho Supreme Court concluded from the broad language of the statute, that the legislature also intended to reject the open and notorious danger defense which existed at common law.

In contrast, Idaho Code §§ 28-24-102 (2) & (3) specifically describe how a farm equipment supplier's statutory obligations are created.  The statute clearly rejects common law requirements for the formation of a long-term dealership contract – such as offer and acceptance – as a prerequisite to the statutory protection the legislature was affording farm equipment dealers.  Rather, it defines a "dealer agreement" covered by the statute as including either a contract or an agreement, whether express or implied and whether oral or written, so long as there is a "continuing commercial relationship" between the supplier and the dealer.  Idaho Code § 28-24-102(3).  To further broaden the statute's application, a "continuing commercial relationship" is defined as "*any relationship* in which the equipment dealer has been granted the right to sell or service equipment manufactured by supplier."  Idaho Code § 28-24-102(2) (emphasis added).

**Memorandum Decision and Order – Page 8**

Clearly, the legislature intended that the statute's protection would extend to informal business relationships, including those established by a course of conduct rather than a formal agreement satisfying the formalities of contract law.

AGCO also argues that the Farm Equipment Dealer Law must be read in conjunction with Idaho's Statute of Frauds, Idaho Code §§ 28-2-201. Read together, AGCO argues these statutes create a requirement of mutual assent to a contract for future sales to trigger statutory protections for equipment dealers.

AGCO's argument is unpersuasive. The Statute of Frauds recognizes the existence of a contract between merchants "with respect to goods for which payment has been made and accepted or which have been received and accepted." Idaho Code § 28-2-201(3)(c). If a supplier sells a dealer a piece of equipment to be sold at retail, an enforceable contract is created when the dealer accepts the equipment or when the supplier accepts the payment. This single sale would satisfy the first element of the statutory "dealer agreement." The supplier granted the dealer the enforceable right to sell the single piece of equipment at retail. The second element of a "dealer agreement" is satisfied once the supplier grants the dealer that right with sufficient regularity to create a "continuing commercial relationship." The Idaho Farm Equipment Dealer Law does not conflict with

**Memorandum Decision and Order – Page 9**

Idaho's Statute of Frauds.

Consequently, Sitco and AGCO had a statutory "dealer agreement" for two different reasons.

First, the dozens of completed transactions during 2004 and early 2005 created a statutory "dealer agreement." AGCO admits it sold Sitco its Valtra tractors and equipment dozens of times during this period. AGCO also admits that Sitco's "payment ha[d] been made and accepted" by AGCO, satisfying the Statute of Frauds. Idaho Code § 28-2-201(3)(c). Each time Sitco paid for a tractor or part, AGCO contractually granted it the right to resell the equipment or part at its retail store. The first element of a "dealer agreement," granting the right to sell or service equipment, was satisfied dozens of separate times.

The second element, a "continuing commercial relationship," is satisfied because there were dozens of sales. Dozens of sales surely equated to "*any relationship* in which the equipment dealer has been granted the right to sell or service equipment manufactured by supplier." Idaho Code § 28-24-102(2) (emphasis added). The dozens of completed sales created a "dealer agreement."

There is yet another reason a "dealer agreement" existed. AGCO is the successor in interest to Valtra U.S.A, which had a written dealer contract with Sitco. This written contract was signed by the Vice-President of Sitco and the

**Memorandum Decision and Order – Page 10**

President of Valtra U.S.A in August of 2002.  *See Plaintiff's Verified Complaint*, Exhibit H.  It laid out the terms of how Valtra tractors and equipment would be sold to Sitco.  It specifically refers to Sitco as a dealer.  This written contract would satisfy even the traditional requirements for creation of a contract that AGCO argues are required to create a statutory "dealer agreement."  By the terms of the statute, AGCO, as successor in interest, assumed Valtra USA's statutory obligations to Sitco.  Idaho Code § 28-24-104E.

AGCO also contends that it did not violate the statute, because it simply chose not to renew the contract, and thereby allowed the contract to expire by its terms.  However, the Farm Equipment Dealer Law does not permit a supplier to terminate a dealership agreement in this fashion.  A supplier cannot "[t]erminate, cancel or *fail to renew* the dealer agreement of any equipment dealer. . . without good cause."  Idaho Code § 28-24-103(4) (emphasis added).  That good cause must be cited in a written termination notice to the dealer – in most cases 90 days before the termination date.  *Id.* at § 28-24-104.  AGCO does not allege that it or Valtra U.S.A ever had good cause to fail to renew Sitco's agreement.  Moreover, it does not allege a written notice of non-renewal was made 90 days before termination.

The dealer agreement created by the August 2002 written contract was not properly terminated by Valtra U.S.A.  AGCO does not dispute that it is the

**Memorandum Decision and Order – Page 11**

"successor in interest" to Valtra U.S.A under Idaho Code § 28-24-102(8). Consequently, Valtra U.S.A.'s "obligations" to not terminate without good cause and written notice "are applied to" AGCO.  *Id.* at § 28-24-104(E).  AGCO concedes that it failed to perform these obligations before termination.

Since, a dealer agreement existed, AGCO is liable for wrongful termination under the Farm Equipment Dealer Law.

**4.      Is the Statute unconstitutional?**

At oral argument, AGCO asserted that the statute is protectionist and may violate the constitution.  AGCO also asserted a general constitutional infirmity in its Answer, but provided no substantive argument in its brief or at oral argument. *Defendant's Answer* at p. 2, ¶ 8.

The Farm Equipment Dealer Law could raise a dormant Commerce Clause issue.  A statute violates the dormant Commerce Clause when it discriminates against out of state parties, on its face or in effect, without serving a legitimate local purpose that could not be served otherwise.  *Maine v. Taylor*, 477 U.S. 131, 138, 106 S. Ct. 2440, 2447 (1986).  A statute is also violates the commerce clause if its burden on interstate commerce is "clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 847 (1970).

**Memorandum Decision and Order – Page 12**

The Farm Equipment Dealer Law clearly protects Idaho's farm equipment dealers from out of state suppliers. However, it does not treat in-state suppliers different from foreign suppliers. Nor does it prevent out of state dealers from operating in Idaho. Thus, it makes no discriminatory distinctions on its face. Additionally, AGCO submitted no evidence showing any discriminatory effect. Therefore, under *Maine*, the statute is not unconstitutional because of any discriminatory effect. 477 U.S. at 138, 106 S. Ct. at 2447.

Additionally, under *Pike*, the Court finds no evidence in the record that the statute creates a substantial burden on interstate commerce. 397 U.S. at 142, 90 S. Ct. at 847. Even if such a burden exists, the statute does provide the significant local benefit of protecting dealers from unfair supplier practices. AGCO would need to prove a substantial impact on interstate commerce to outweigh this local benefit. *See Gravquick A/S v. Trimble Navigation International Ltd.*, 323 F.3d 1219, 1224-25 (9th Cir. 2003) (rejecting dormant Commerce Clause challenge to California Equipment Dealer Act). On the record provided, the Court finds no constitutional violations.

## 5.     The Motion to Strike is Moot.

The Court finds sufficient evidence in the record to grant partial summary judgment on liability without relying on the affidavits that are subject to AGCO's

**Memorandum Decision and Order – Page 13**

Motion to Strike. Thus, the Motion to Strike is mooted by the Court's grant of partial summary judgment.

### 6. <u>Attorney's Fees.</u>

Sitco requests its attorneys fees for work conducted on this motion. The Statute does provide that "the prevailing party shall be entitled to recover reasonable attorney's fees and costs." Idaho Code § 28-24-105. Thus, the Court will grant Sitco an award of attorney's fees and costs to be determined in further proceedings.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for partial summary judgment (Docket No. 11) filed by plaintiffs is GRANTED.  Summary Judgment is granted to the extent that AGCO is liable to Sitco under Idaho Code § 28-24-101 *et. seq.* (2005) for compensatory damages and attorney's fees and costs incurred in this motion.

The amount of compensatory damages and attorney's fees will be determined in other proceedings.

The Motion to Strike (Docket No. 63) is hereby deemed MOOT.

DATED:  **October 25, 2005**

_____
B. LYNN WINMILL
Chief Judge
United States District Court